UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

EWU MEDIA LLC,

      *Plaintiff*,

v.                                                                    Civil Action No. 3:25-cv-410-BJB

LOUISVILLE-JEFFERSON COUNTY
METRO GOVERNMENT, by and
through
LOUISVILLE METRO POLICE
DEPARTMENT

      *Defendant*.

**AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF**

EWU Media LLC brings this lawsuit under the laws of Kentucky to appeal the

Office of the Attorney General's Open Records Decision 25-ORD-119, which erroneously

adopted the Louisville-Jefferson County Metro Government's argument that EWU Media

is not a "resident" of Kentucky for Open Records Act purposes because it is not a "news-

gathering organization." The Attorney General's decision improperly arrogates the

authority to determine what constitutes legitimate journalism—a determination that violates

both the Open Records Act and fundamental Kentucky constitutional principles. By

applying an archaic, print-centric—and thus non-sensical—definition of "*online-only*

newspaper or magazine that publishes news or opinion of interest to a general audience"

(KRS 189.635(9)(b)1.e), and dismissing true crime reporting as mere "entertainment," the

Attorney General has created a dangerous precedent that allows government officials to act

1

as arbiters of what qualifies as news. That, in turn, allows the AG to decide which media

requesters are entitled to receive public records.

This Court should declare that EWU Media qualifies as a news-gathering

organization under KRS 61.870(10)(g) and KRS 189.635(9)(b)1.e., and that government

agencies may not deny Open Records requests based on their subjective assessment of

whether a requester's journalism meets their personal standards. It should order LMPD to

immediately produce the requested records.

## PARTIES, JURISDICTION, AND VENUE

1.      EWU Media LLC is a limited liability company that produces and publishes

in-depth documentary journalism focused on crime, law enforcement, and judicial

proceedings. EWU has 6.14 million subscribers on YouTube—far exceeding the reach of

any traditional news outlet based in Kentucky.

2.      Louisville-Jefferson County Metro Government ("LMG") is the governing

body for the merged governments of the city of Louisville, a city of the first class formed

under Kentucky law, and Jefferson County, Kentucky.

3.      Louisville Metro is a "public agency" as that term is defined in KRS

61.870(1).

4.      Louisville Metro Police Department ("LMPD") is an agency within

Louisville Metro and a "public agency" within the meaning of KRS 61.870(1) and is located

at 633 W. Jefferson Street, Louisville, Kentucky 40202.

5.      This action is brought pursuant to KRS 61.880(5) and KRS 418.040, seeking

injunctive relief requiring LMPD to disclose the documents requested by LMPD, as well as

declaratory relief clarifying that EWU Media qualifies as a "news-gathering organization" under the Open Records Act.

6.      Jurisdiction and venue belong in the Jefferson Circuit Court as this amended complaint presents only state-law questions and the defendants maintain their principal place of business in Jefferson County, where the records are located. *See* KRS 61.882(1).

FACTUAL BACKGROUND

A.      **EWU Media's Journalistic Enterprise**

7.      EWU Media operates as an online-only news organization that produces documentary journalism examining criminal cases, law enforcement practices, and the judicial system.

8.      EWU Media's work includes obtaining and reviewing voluminous public records and court documents, analyzing countless hours of video evidence, conducting original interviews with witnesses, victims, and other involved parties, and producing substantive documentary videos that provide in-depth analysis of specific cases.

9.      Each documentary is accompanied by narrative text describing the records, video, and other information presented, which often appears onscreen alongside the audio.

10.     Examples of EWU Media's journalism include:

- A 30-minute documentary about elected official Riley Carter that compiled court records, campaign footage, police interrogation videos, and original interviews with the suspect's wife, which has been viewed over 5 million times;

- An hour-long documentary about the Jacob Wetterling murder case featuring extensive interviews with a falsely accused suspect and witnesses, viewed 5.6 million times;

- An hour-long documentary about abuse allegations against Jayme Cushman containing interviews with victims and friends, viewed 13 million times.

3

11.     EWU Media's documentaries involve substantial editorial judgment in selecting, organizing, and presenting information to tell comprehensive stories about matters of significant public interest.

12.     True crime journalism has long been recognized as a legitimate and important form of news reporting, as evidenced by established news programs like Dateline NBC, 48 Hours, 60 Minutes, and numerous Peabody and other journalism award-winning podcasts like Serial, The Pope's Long Con (Kentucky Public Radio), and The Big Conn (Apple).

13.     EWU's videos have been viewed over 2.5 *billion* times since 2015.

**B.      The Open Records Requests and Denials**

14.     On January 25 and February 10, 2025, EWU Media submitted Open Records requests to LMPD seeking investigative records related to two criminal investigations.

15.     EWU submitted its first request on January 25, 2025. Ex. 1, ORR 25-907. It sought certain police reports, photographs, audio recordings, and video files contained in LMPD's investigative file for Racheal Flannery, who, on the day before the request was issued, was sentenced to 7 years in prison on 10 counts of child abuse.

16.     LMPD responded to ORR 25-907 the next day and incorrectly asserted the request is for a "commercial purpose" as defined by KRS 61.870(4). It instructed EWU it must pay "fees based off the hourly rate of the employee(s) who process the request." *Id.*

17.     Four days later, LMPD denied EWU's request outright by incorrectly claiming EWU is not a "Resident of the Commonwealth" as defined by KRS 61.870(10). Id.

18.     EWU responded to LMPD's denial to explain that it is, in fact, a "Resident of the Commonwealth" entitled to request public records. The Act defines resident to include

any "news-gathering organization as defined by KRS 189.635(9)." That statute, inter alia, lists various types of publications that qualify as "news-gathering organizations"—including publications like EWU—that are "periodical[s]" containing "news of general interest to its readers" and "online-only newspaper[s] or magazine[s] that publish[] news or opinions of interest to a general audience." KRS 189.635(9)(b)(iii), (d).

19.    The next day, EWU followed up to contest LMPD's claim that its records request was for a commercial purpose. EWU explained it is an "online periodical, regularly publishing journalistic content for public dissemination" that is specifically exempted from the Act's commercial purpose provisions. Ex. 1 (citing KRS 61.870(4)(a)). EWU noted the "intent behind Kentucky's Public Records Act is to promote transparency" and does not permit public agencies to "restrict media access [to public records] through unjustified fee requirements." *Id.* (citing KRS 61.870(4)).

20.    LMPD ignored EWU's entreaties and continues to willfully withhold the requested public records in violation of the Act.

21.    EWU submitted its second request on February 10, 2025. That request sought certain police reports, photographs, audio recordings, and video files contained in LMPD's investigative file for Shatessa Manica, who was charged with multiple felonies, including child abuse, possession of controlled substance, and identity theft. Ex. 2, 25-1619.

22.    LMPD responded again denying the request by incorrectly asserting it is for a "commercial purpose" and EWU is required to pay fees "based off the hourly rate of the employees who process the request." Ex. 2.

23.    In both requests, EWU Media specifically stated that it qualified as a news-gathering organization under KRS 189.635(9)(b)1.e. because it is "[a]n online-only newspaper or magazine that publishes news or opinion of interest to a general audience."

24.    LMPD initially denied the requests claiming they were for a "commercial purpose," but later changed its rationale and denied the requests on the basis that EWU Media was not a "resident of the Commonwealth" because LMPD determined that, in its view, EWU Media did not qualify as a news-gathering organization.

25.    EWU Media appealed these denials to the Office of the Attorney General pursuant to KRS 61.880.

**C.    The Attorney General's Decision**

26.    After EWU Media appealed, LMPD explicitly acknowledged that it should not have denied the requests on the basis that EWU was a commercial requester: "The City concedes that it cannot deny an Open Records request simply because it disagrees with a requester's certification that it is not a commercial requester."

27.    That concession was consistent with a March 19, 2025 response to a different Open Records appeal that, where LMPD conceded that "it is aware that when a requester affirmatively states a non-commercial purpose, Metro cannot deny on the basis that it disagrees with that statement."

28.    Instead, LMPD argued that EWU is not a resident of Kentucky under KRS 61.870(10)(g), and therefore unable to request records, because LMPD does not consider EWU a news-gathering organization.

29.     On May 13, 2025, the Attorney General issued Open Records Decision 25-ORD-119, finding that Louisville Metro did not violate the Open Records Act when it denied EWU Media's requests based on residency.

30.     The Attorney General concluded that EWU Media was not an "newspaper or magazine" because it "published its content with videos" rather than focusing on "*printed* materials." Ex. 3, 25-ORD-119, p. 3.

31.     The decision acknowledged that the Act does not define "newspaper" or "magazine," yet proceeded to apply dictionary definitions that emphasized print media, ignoring how journalism is practiced in the digital age.

32.     That myopic focus on printed materials makes no sense in the context of the relevant statutory provision, KRS 189.635(9)(b)1.e., which includes "online-only" newspapers and magazines, *none* of which are "printed."

33.     The Attorney General further suggested—without any basis in the statutory text—that "true crime" content should not be considered material "of interest to a general audience." 25-ORD-119, p. 3.

34.     The Attorney General's decision creates a dangerous precedent allowing government officials to make subjective determinations about what constitutes legitimate journalism based on format, subject matter, or perceived entertainment value.

## COUNT I – VIOLATION OF OPEN RECORDS ACT
### (Requests # 25-907 and 25-1619)

35.     EWU Media hereby incorporates and restates the allegations set forth in the preceding paragraphs of this Complaint.

36.     LMPD, and 25-ORD-119, erroneously interpreted "online-only newspaper or magazine" to exclude online-only publications that present their journalism through video documentaries rather than traditional text articles.

37.     This interpretation ignores the reality that many of the most significant journalistic enterprises today exist primarily or exclusively online, including podcasts, YouTube channels, and digital-first publications.

38.     The Attorney General's suggestion that dictionary definitions of "newspaper" and "magazine" limit these terms to print media contradicts the plain language of KRS 189.635(9)(b)1.e., which specifically includes "online-only" newspapers and magazines.

39.     An "online-only" newspaper or magazine by definition cannot be limited to "printed materials," making the Attorney General's interpretation internally contradictory and absurd.

40.     The Attorney General also improperly suggested that true crime journalism might not be "of interest to a general audience," despite the *billions* of views EWU Media's documentaries receive and the long-established tradition of crime reporting in American journalism.

41.     The Attorney General exceeded his authority by making subjective determinations about what constitutes legitimate journalism rather than accepting EWU Media's certification of its status as a news-gathering organization that produces journalistic videos of interest to a general audience.

42.     LMPD willfully violated the Open Records Act when it denied EWU's requests based on its subjective view of whether EWU's documentaries should be considered "news-gathering."

43.     Under Kentucky law, EWU Media is entitled to disclosure of public records it requested. This Court should enter an injunction under KRS 61.882(1) to compel disclosure of the records.

44.     Pursuant to KRS 61.882(4), this action should take precedence on this Court's docket over all other causes and should be assigned for hearing or trial at the earliest practicable date.

45.     Pursuant to KRS 61.882(5), LMPD's willful violations of the Open Records Act entitle EWU Media to recover its costs, including reasonable attorneys' fees, from its efforts to obtain these records, as well as statutory penalties for each day the records have been withheld.

## COUNT II –VIOLATION OF FREE SPEECH UNDER SECTION 1 OF THE KENTUCKY CONSTITUTION

46.     EWU Media hereby incorporates and restates the allegations set forth in the preceding paragraphs.

47.     The Kentucky Constitution provides that "All men are, by nature, free and equal, and have certain inherent and inalienable rights, among which may be reckoned… The right of freely communicating their thoughts and opinions." Ky. Const. § 1.

48.     Kentucky Courts have interpreted this provision to parallel the rights guaranteed by the First Amendment to the U.S. Constitution. *McCall v. Courier-J. & Louisville Times Co.*, 623 S.W.2d 882, 895 (Ky. 1981).

49.     However, it is a separate protection based solely on Kentucky law. This claim is not based on the First Amendment to the U.S. Constitution.

50.     Kentucky's Constitution does not give government officials the ability to decide what qualifies as a "news-gathering organization" based on subjective criteria.

51.     As the U.S. Supreme Court has recognized in interpreting the parallel provision of the U.S. Constitution, "government regulation that allows arbitrary application...has the potential for becoming a means of suppressing a particular point of view." *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130 (1992) (cleaned up). Indeed, where a "permit scheme involves appraisal of facts, the exercise of judgment, and the formation of an opinion by the licensing authority, the danger of censorship and of abridgment of our precious First Amendment freedoms is too great to be permitted." *Id.* at 131 (quotation marks and citations omitted).

52.     Such standardless discretion violates the Kentucky Constitution's prohibition on prior restraints and viewpoint discrimination.

53.     A majority of Supreme Court justices have recognized that even in the context of public records statutes, regimes permitting custodians to discriminate between requesters based on viewpoint or perceived importance would unconstitutional violation of free speech principles. *Los Angeles Police Dep't v. United Reporting Pub. Corp.*, 528 U.S. 32, 43-44 (1999).

54.     Federal courts interpreting the equivalent federal constitutional provision have recognized that "respect for a publisher's right to exercise 'editorial control and judgment' is not reserved for print media alone; it applies with equal force to outlets that publish content on the Internet." *Washington Post v. McManus*, 355 F. Supp. 3d 272, 300 (D. Md. 2019).

55.     The Attorney General's interpretation would allow any government agency to deny access to public records by simply declaring that a requester's journalism is not "real"

news—whether because it appears on YouTube rather than in print, focuses on crime rather than politics, or includes dramatic presentation rather than dry recitation of facts.

56.    Thus, to the extent 25-ORD-119 asserts the right to judge whether a particular requester is sufficiently similar to a "newspaper or magazine," or broadcasts news "of interest to a general audience," that interpretation cannot withstand scrutiny under Kentucky's Constitution.

57.    EWU Media is therefore entitled to a declaration that public agencies such as LMPD, and the Attorney General, cannot second-guess its certification that it meets the definition of "news-gathering organization" set forth in KRS 189.635(9)(b)1.e.

### COUNT III – ARBITRARY AND UNEQUAL TREATMENT

58.    EWU Media hereby incorporates and restates the allegations set forth in the preceding paragraphs.

59.    Section 2 of the Kentucky Constitution states that "[a]bsolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."

60.    Section 3 of the Kentucky Constitution states that "All men…are equal."

61.    25-ORD-119 violates this principles because it arbitrarily distinguishes EWU Media from other online publications previously recognized as news-gathering organizations under KRS 189.635(9)(b)1.e.

62.    The Attorney General concluded, for example, that a "fan website dedicated to Florida State Athletics" qualified as a news-gathering organization (23-ORD-349), as did "Western States Media" (23-ORD-087), yet concluded EWU Media did not qualify despite producing far more substantial journalistic content.

63.     This arbitrary distinction demonstrates the dangers of allowing government

officials to make subjective determinations about what constitutes legitimate journalism.

64.     The Attorney General's arbitrary decision violates principles of equal

treatment and creates an incoherent and discriminatory framework for determining who can

access public records.

**WHEREFORE, EWU Media respectfully requests the following relief:**

1.  A declaratory judgment that EWU Media qualifies as a "news-gathering
    organization" under KRS 61.870(10)(g) and KRS 189.635(9)(b)1.e. because it is an
    online-only publication that broadcasts news of interest to a general audience;

2.  An order enjoining LMPD to produce the requested records;

3.  A judgment declaring that LMPD may not deny records requests from online
    publications based on its subjective determinations about what constitutes legitimate
    journalism;

4.  An award of attorneys' fees and statutory penalties pursuant to KRS 61.882(5); and

5.  All other relief to which EWU Media may be entitled.


Respectfully submitted,

*s/ Heather Gatnarek*
Michael P. Abate
Heather Gatnarek
KAPLAN JOHNSON ABATE & BIRD LLP
710 West Main Street, 4th Floor
Louisville, KY 40202
(502) 416-1630
mabate@kaplanjohnsonlaw.com
hgatnarek@kaplanjohnsonlaw.com

*Attorneys for Plaintiff EWU Media LLC*